FILED
2023 Aug-31 AM 05:03
U.S. DISTRICT COURT
N.D. OF ALABAMA

Lincoln Life Assurance Company of Boston
Disability and Life Claims Appeal
PO Box 2578
Omaha, NE 68172-9688

MS. BARBARA MCKEITHAN

EXHIBIT

2

Lincoln Financial Group®

Lincoln Life Assurance Company of Boston
Disability and Life Claims Appeal
PO Box 2578
Omaha, NE 68172-9688
Phone No.: (888) 437-7611
Secure Fax No.: (603) 334-5853

April 24, 2021

Ms. Barbara A. McKeithan

RE: Long Term Disability (LTD) Benefits
Unilever, USA
Claim #: 8520656

Dear Ms. Barbara McKeithan:

We reviewed your appeal request for Long Term Disability ("LTD") benefits and maintained the decision to deny benefits beyond January 7, 2021. You received benefits through January 20, 2021, while the investigation was previously completed, and reimbursement is not required.

**Initial Claim Decision**

You submitted a claim for your absence from work as of July 10, 2018, as a result of a left rotator cuff tear and repair on that date. On May 7, 2019, you underwent a right shoulder rotator cuff repair, subacrominal decompression and labral debridement and distal clavicle excision was performed.

Your LTD benefits began on January 8, 2019, therefore the change in definition of disability occurred on January 8, 2021 and to receive benefits beyond 24 months you must be disabled from any occupation as defined in the Policy. Benefits beyond January 8, 2021 were denied as the evaluation concluded you were no longer disabled as defined by the Policy; however as noted in a letter on December 18, 2020, your claim was approved beyond this date under Reservation of Rights while the investigation was completed regarding your eligibility for benefits beyond January 7, 2021. The decision was completed on January 20, 2021, with no further benefits payable beyond that date.

The basis for the decision was outlined in a letter dated January 23, 2021. You were provided an opportunity to request an appeal review of the denial, stating the reasons why you felt that your claim should not have been denied, and submit additional information to support your claim. Specifically, you were advised to submit the following information:

*Any and all office notes, phone notes, diagnostic test results, consultations/evaluations, operative/procedure reports, hospital records including emergency room reports and discharge summaries, physical therapy notes, physical therapy evaluations and discharge plans, treatment plans, restrictions and limitations and/or pharmacy records from July 10, 2018 forward from any*

*and all treating providers including but not limited to Dr. Thomas, First Health PT, Dr. Cadet, Dr. Barnes, & First Health Hospital.*

**Appeal**

In your letter of appeal dated February 3, 2021 you indicated you were disputing the change in your status as you are currently under the care of Dr. Edwin Cadet, and enrolled in physical therapy for your right shoulder with restrictions on what you can do. You said there is no way for you to maintain your income and work in the same profession while under these circumstances. You said you signed a contract in July 2018 with the provision that you were start on short term disability before being moved to long term disability, and have not received an updated contact discussing having your disability cut off. You said you should be grandfathered under the contract that you agreed to, and had not spoken to your caseworker since December 2020. You said the letter had many statements that were untrue or miscommunicated, and you underwent a nerve conduction velocity test on March 28, 2019. You also said when you spoke to the claim specialist that day, you were informed there are several jobs hiring someone with your skills, but we did not take into consideration that you are on restrictions for medical reasons and would not likely receive said job. You said the worst case scenario is that you return to work under our recommendation and receive a worse injury or lose the use of your limb, and you were hurt working for Unilever, and do not believe you should accept any job or lower your standard of living because of work related incidents.

In support of your claim, you submitted the following information:

- A list of physical therapy appointments from January 13, 2021 through February 17, 2021

- January 4, 2021 Physical Therapy Initial evaluation. Diagnosis pain in joint, shoulder, right. You underwent partial acromioplasty, distal claviculectomy (mumford) and rotator cuf repair of a partial tear on July 10, 2019. Left shoulder with normal active range of motion. Right shoulder 150 degrees with pain on flexion, 4+, , extension 40 degrees with pain 4-, abduction 135 degrees, external and internal rotation: 40 degrees with pain and 3+. Assessment: abnormal or restricted ROM, activity intolerance, impaired physical strength, lacks appropriate home exercise program and pain with function. Skilled PT required 1x/wk for 10 weeks.

- January 13, 2021, January 20, 2021, January 27, 2021daily PT treatment note

- January 28, 2021 office visit note, E Schmidt, PAC for sore throat and cough. Upper respiratory infection, unspecified. COVID-19 ruled out.

- February 9, 2021 Notice of Hearing for February 23, 2021: Social Security Administration

On February 19, 2021 we spoke about your appeal status and I confirmed it was under review. I asked if you had submitted all of the records you wished to have considered and you confirmed you had. On February 27, 2021 I confirmed I had completed the initial appeal review and was referring your claim for physician review.

**Appeal Evaluation**

During the claim evaluation of ongoing benefits, your claim file includes the following information:

- A work restrictions note was completed by Dr. Cadet on 04/22/2020. The claimant was not to use her arms overhead, push, or pull over 10 pounds, lift over 10 pounds, carry over 10 pounds, or floor to waist lift over 10 pounds, and continue on light duty.

- You had a functional capacity evaluation with Katherine Melton, P.T., M.P.T. on 06/08/2020. You had a history of right rotator cuff repair and left rotator cuff repair. You stated that she had a nerve conduction study that demonstrated bilateral carpal tunnel syndrome. A Medium-Heavy demand level was required per patient description of your job and Light per dictionary of Occupational Therapy. You were qualified for light duty. You did not meet the lifting requirements of your prior job.

- You were seen by Dr. Cadet on 06/24/2020. You had 5/10 left and right shoulder pain. You took Meloxicam as needed. You had mildly positive Neer and Hawkins testing on examination. Your functional capacity evaluation demonstrated that you were eligible to do light duty work with weight restrictions. You were to follow up on an as needed basis and had reached maximum medical improvement.

- A restrictions form was completed on 06/24/2020 by Edwin Cadet, M.D. You were permitted to do light duty work. Occasional lifting of 16 pounds, frequent lifting of 10 pounds, and constant lifting of 4 pounds.

- You were seen by Dr. Cadet on 08/22/2020, 11 months out from your rotator cuff repair on the right and had been battling shoulder stiffness. You were continuing with physical therapy but still had 3-4/10 pain severity. You had limited active and passive range of motion compared to the contralateral side and weakly positive Speed and O'Brien's testing. You had some mild delamination on the undersurface of the rotator cuff, but the integrity of the rotator cuff repair was intact. You were to have functional capacity testing and continue with work restrictions of no overhead lifting and weight restriction of 10 pounds from floor to waist.

- You were seen by Dr. Lundberg on 11/11/2020, reported left upper back pain causing shortness of breath, dizziness, and an episode of incontinence one hour prior. You woke up and rolled to your side and felt a sharp and pinching sensation in the left upper back. The pain worsened with movement. You had tenderness in spasms in the left upper thoracic area with palpation. Pain was worse with overhead shoulder range of motion. You were diagnosed with thoracic strain and was given nonsteroidal anti-inflammatory medication and muscle relaxant. You were discharged to follow up with her primary care physician.

- A long-term disability form was completed on 12/15/2020 by Dr. Cadet. You were allowed to perform light duty work with occasional lifting 16 pounds, frequent lifting 10 pounds, and constant lifting 4 pounds, with referring to the functional capacity evaluation.

In January 2021, your claim file was reviewed by Dorothy M. Griggs, MD, an independent physician who is board certified in Physical Medicine and Rehabilitation. Dr. Griggs called Dr. Cadet (orthopedic surgeon) to discuss your supported restrictions/limitations. On January 4, 2021, Dr. Griggs was transferred to and spoke with Dr. Cadet's medical assistant, who said she was very familiar with you and reported an updated EMG/NCV was not done (regarding upper extremity numbness and tingling), nor was a consult completed with Dr. Schreiber (hand surgeon). She stated it was not an ongoing complaint that needed to be addressed, noting you had done about a year of

Physical Therapy and maximized your ability to advance. Dr. Griggs noted the restrictions/limitations she had identified (listed below) and explained these restrictions/limitations to the medical assistant, with the assistant agreeing they were appropriate. Dr. Griggs sent a confirming letter to Dr. Cadet and the medical assistant that day, confirming the conversation.

On January 11, 2021 based on her review of the medical records, Dr. Griggs concluded:

*Significant impairment exists due to chronic bilateral shoulder pain with limited motion for end ranges of rotation and overhead movement and weakness in these same ranges. In her self-description of function on 12/21/2020 the claimant noted that she is able to perform basic functional activities of self-care independently such as bathing, grooming and dressing with occasional assist from her daughter, driving up to 45 minutes, financial management and opening and responding to mail. She is helped for heavier chores by her children such as carrying groceries, cooking, cleaning and laundry. The above noted impairments translate reasonably to the following restrictions and limitations:*

- *Sitting up to an hour at a time with frequent position change recommended as instructed in P.T. as well as with the ability to elevate her legs as needed while in the seated position. Maximum sitting 8 hours in a work shift.*
- *Standing and walking each continuously no >30 minutes at a time and ideally alternating with sitting. Maximum stand and walk 3 hours in an 8- hour day.*
- *Avoidance of overhead reaching and lifting with any >10lbs. occasionally.*
- *Lifting from floor to waist and waist to shoulder no >16lbs. occasionally and 10 lbs. frequently. Carrying, pushing, pulling for short distances (not over 15 feet) no >20 lbs. occasionally and no > 10lbs. frequently.*
- *No restrictions for use of bilateral upper extremities in up to shoulder height range including use of elbows, wrists, and hands including gripping, firm gripping, pinching and fine motor manipulation such as use of a keyboard or mouse.*

On January 13, 2021, we received Dr. Cadet's signed agreement with the restrictions/limitations Dr. Griggs outlined in the January 4, 2021 letter sent to Dr. Cadet.

During the review of your appeal, your claim was reviewed by Craig Lankford, MD, an independent physician who is board certified in Physical Medicine and Rehabilitation and Pain Medicine. Dr. Lankford called Dr. Cadet on March 4, 2021 and March 8, 2021, leaving messages each time for a return call to discuss your supported restrictions/limitations. Contact with Dr. Cadet was unsuccessful.

Based on his review of the medical records, Dr. Lankford concluded:

*Due to the claimant's age and history of bilateral shoulder surgery with poor response to treatment and extensive physical therapy, the restrictions and limitations are likely to be permanent. These recommended restrictions and limitations are based upon the clinical history from the included medical records as a whole. According to an evaluation dated 01/11/2021, the claimant had continued chronic left shoulder pain despite multiple treatment modalities. The claimant required help for heavier chores. The claimant had limited range of motion along with weakness on examination bilaterally. Therefore, restrictions/limitations are warranted. Restrictions and limitations would include:*

*Sitting: Unrestricted*
*Standing: Unrestricted*
*Walking: Unrestricted*
*Lifting/carrying/pushing/pulling: up to 10 pounds occasionally; carrying, pushing, pulling for short distances not greater than 20 pounds occasionally or 10 pounds frequently bilaterally*
*Climbing stairs: Occasionally*
*Climbing ladders: Never*
*Stooping: Unrestricted*
*Kneeling: Unrestricted*
*Crouching: Unrestricted*
*Crawling: Never*
*Reaching Overhead: Never, bilaterally*
*Reaching at waist and desk level: Unrestricted bilaterally*
*Reaching below waist: Unrestricted bilaterally*
*Use lower extremities for foot controls: Unrestricted bilaterally.*
*Fine manipulation: Unrestricted bilaterally*
*Simple and firm grasping: Unrestricted bilaterally.*
*Keyboarding: Unrestricted bilaterally*

And

*As of 01/08/021 forward, the claimant is able to sustain full-time work capacity taking into consideration the above restrictions and limitations outlined.*

On March 24, 2021, I advised you that the physician review had been received, with the conclusion that you would be limited to lifting 10 pounds occasionally, no reaching overhead, and no limitations on standing, walking or sitting. I explained I had referred your claim file for vocational review to determine if there were alternate occupations you could perform based on these restrictions, and consistent with your training, education and experience. You expressed concerns about still attending physical therapy and being unable to work. We discussed that many people attend physical therapy around working hours. You then expressed concern that you would have to 'quit' your job that you were making $20-22/hr and worked at for 10 years and work somewhere else. We discussed that the policy requires you to be disabled from "any occupation", and once I had received the vocational review I would update you. I also explained that if both the physician and vocational review did not appear to support continued benefits, I would send the reports to you for your review and opportunity to provide additional information for appeal review.

On March 26, 2021 we received your request for a copy of the LTD Policy. On March 30, 2021 we sent the policy and a cover letter to your email address. We discussed this on March 31, 2021 and since you stated you had not received it, we resent it to you on March 31, 2021 and called you that day to confirm.

*Your claim was previously reviewed* by a vocational consultant, for a transferrable skills analysis based on your prior work history, educational background, and/or life experience and capacity within the restrictions and limitations outlined by Dr. Griggs. The analysis showed:

**Skills & Abilities:**
Manual Skills:

- Ability to operate or tend equipment to control chemical changes or reactions in the processing of industrial or consumer
products.
- Monitor gauges, dials, or other indicators to make sure a machine is working properly.
- Control operations of equipment or systems.
- Determine causes of operating errors and decide what to do about it.
- Ability to complete repetitive tasks.
- Follow simple instructions.
- Work independently.
- Good organizational skills, paying attention to detail and handling multiple tasks simultaneously.
- Ability to access and enter information using an automated system quickly and accurately.
- Adjusting to performing repetitious, uncomplicated work.
- Loading, unloading, or tending assorted machines.

Manual Skills:
- Knowledge of inventory controls.
- Follow simple instructions.
- Ability to complete repetitive tasks.
- Ability to work independently.
- Good organizational skills, paying attention to detail and handling multiple tasks.
- Ability to access and enter information using an automated system quickly and accurately.
- Accuracy and attention to detail.
- Ability to correctly inventory, pick, store, ship, and receive parts by applying simple arithmetic processes of addition, subtraction, multiplication, and division.
- Operate fork lift.

Communication Skills:
- Communicate effectively with others.
- Ability to recognize problems/concerns.
- Inform and consult with staff.

***<u>Examples of Occupations identified based on National labor market and claimants ability profile analysis:</u>***

| ***DOT Code*** | ***Occupation*** | ***SVP*** | ***Str*** | ***National Monthly Wage**** |
|---|---|---|---|---|
| *239.367-014* | *Dispatcher, Maintenance Service* | *3* | *S* | *$3349* |
| *245.367-026* | *Order Control Clerk, Blood Bank* | *3* | *S* | *$2853* |

**Wage Information is based on median 2019 Bureau of Labor Statistical Data*

The vocational consultant also stated:

*Although OASYS did not identify, based on my vocational expertise and Labor Market Survey Research, Ms. McKeithan would have the ability to perform:* ***Information Clerk (237.367-022).*** *This is based on her transferable skills of clerical documentation skills, decision making skills, ability to provide detailed information to others, judgement, etc. National median economy wages as an Information Clerk is $2,505. Wage Information is based on median 2019 Bureau of Labor Statistical Data.*

Further vocational review of your file was completed for the appeal, based on the restrictions/limitations outlined by Dr. Lankford. The vocational review concluded:

*Upon review of the available information, this VCM has found that two of the occupational alternatives outlined within the previously completed TSA report (i.e.* ***Dispatcher Maintenance Service and Information Clerk****) remain viable occupations at this time given the updated restrictions. Occupational wages continue to meet the outlined gainful wage amount of $2,064.40 per month in the national economy.*

On April 2, 2021, we emailed and mailed you a copy of Dr. Lankford's report and the updated vocational assessment/Transferable Skills Analysis, offering you the opportunity to provide additional information for appeal review. The information was due in our office by April 23, 2021.

On April 8, 2021, we notified you via email that we had received your change of address and updated our records, also notifying you that we had deactivated your current direct deposit as requested, and included a new direct deposit application with the email sent to you. We also advised you that the appeal was pending your response to the letter and reports emailed to you on April 2, 2021, due in our office by April 23, 2021.

On April 16, 2021, we received your updated direct deposit form via email.

To date, we have not received any further information for review with your appeal, therefore, we have completed our review based on the information on file. Our decision is based on whether the medical evidence supports your inability to perform Any Occupation as defined in the Policy, therefore, we are not considering if you are capable of performing your Own job/Own Occupation.

**Conclusion**

We conducted a thorough and independent review of your entire claim. In summary, we acknowledge that you may have continued to experience some symptoms associated with your condition beyond January 7, 2021. However, the information does not contain physical exam findings, diagnostic test results or other forms of medical documentation supporting your symptoms and impairments remained of such severity, frequency and duration that they resulted in restrictions or limitations rendering you unable to perform the duties of the occupations identified as being with in your functional capacity and vocational skills after that date.

Having carefully considered all of the information submitted in support of your claim, our position remains that proof of your continued disability in accordance with the Policy provisions after January 7, 2021 has not been provided. You have received benefits through January 20, 2021 while the investigation was previously completed, and no repayment is expected. Since you do not meet the definition of disability beyond January 7, 2021, no further benefits are payable.

This claim decision reflects an evaluation of the claim facts and Policy provisions.

**Policy Provisions**

In order to continue receiving benefits, you must satisfy the requirements of all Policy provisions that state, in part:

***"Disability"** or **"Disabled"** means:*

*1. For persons other than pilots, co-pilots, and crewmembers of an aircraft:*
*i. that during the Elimination Period and the next 24 months of Disability the Covered Person, as a result of Injury or Sickness, is unable to perform the Material and Substantial Duties of his Own Occupation; and*
*ii. thereafter, the Covered Person is unable to perform, with reasonable continuity, the Material and Substantial Duties of Any Occupation.*

***"Material and Substantial Duties"** means responsibilities that are normally required to perform the Covered Person's Own Occupation, or any other occupation, and cannot be reasonably eliminated or modified.*

***"Any Occupation"** means any occupation that the Covered Person is or becomes reasonably fitted by training, education, experience, age, physical and mental capacity.*

***"Proof"** means the evidence in support of a claim for benefits and includes, but is not limited to, the following:*

*1. a claim form completed and signed (or otherwise formally submitted) by the Covered Person claiming benefits;*
*2. an attending Physician's statement completed and signed (or otherwise formally submitted) by the Covered Person's attending Physician; and*
*3. the provision by the attending Physician of standard diagnosis, chart notes, lab findings, test results, x-rays and/or other forms of objective medical evidence in support of a claim for benefits.*

*Proof must be submitted in a form or format satisfactory to Liberty.*

***Disability Benefit***

*When Liberty receives Proof that a Covered Person is Disabled due to Injury or Sickness and requires the Regular Attendance of a Physician, Liberty will pay the Covered Person a Monthly Benefit after the end of the Elimination Period, subject to any other provisions of this policy. The benefit will be paid for the period of Disability if the Covered Person gives to Liberty Proof of continued:*

*1. Disability;*
*2. Regular Attendance of a Physician; and*
*3. Appropriate Available Treatment.*

*The Proof must be given upon Liberty's request and at the Covered Person's expense. In determining whether the Covered Person is Disabled, Liberty will not consider employment factors including, but not limited to, interpersonal conflict in the workplace, recession, job obsolescence, paycuts, job sharing and loss of a professional or occupational license or certification.*

*For purposes of determining Disability, the Injury must occur and Disability must begin while the*

*Employee is insured for this coverage.*

***Discontinuation of the Long Term Disability Benefit***

*The Monthly Benefit will cease on the earliest of:*
*8. the date the Covered Person is no longer Disabled according to this policy;*

***Legal Proceedings***

*A claimant or the claimant's authorized representative cannot start any legal action:*
*1. until 60 days after Proof of claim has been given; or*
*2. more than three years after the time Proof of claim is required.*

Under the Employee Retirement Income Security Act (ERISA) appeal guidelines, you were entitled to appeal the decision made by Lincoln Financial Group, and to submit any additional information you wished to be considered as part of the appeal. Lincoln Financial Group has conducted a full and fair review of your appeal and accompanying materials, and has concluded that the denial of benefits will be maintained.

At this time, your administrative right to review has been exhausted; no further review will be conducted by Lincoln Financial Group and your claim will remain closed. You may request to receive, free of charge, copies of all documents relevant to your claim. You have the right to bring a civil action under section 502(a) of ERISA following an adverse benefit determination on review.

If your plan is subject to ERISA, you may have other voluntary alternative dispute resolution options, such as mediation. One way to find out what may be available is to contact your local U.S. Department of Labor Office or your state insurance regulatory agency. In addition, once all required reviews of your claim have been completed, you have the right to bring a civil action under applicable law. Your employer's plan has a contractual limitations period of three years, which means that a lawsuit must be brought within thee years after the date written proof of claim or proof of continued disability was required. The date on which the contractual limitations period expires for this claim is May 23, 2024.

This information is provided for purposes of this claim only, as the time proof of claim is required may differ based on claim specifics and applicable policy language.

Nothing in this letter should be construed as a waiver of any Lincoln Financial Group of Boston rights and defenses under the above captioned Policy, and all of these rights and defenses are reserved to the Company, whether or not they are specifically mentioned herein.

Decisions made by Lincoln Financial Group are based on the provisions outlined in Unilever United States, Inc.'s Policy. These provisions are not contingent on decisions made by either the Social Security Administration or other disability-determining entities. No internal rules, guidelines, protocols, standard or other similar criteria were relied upon in rendering the claim determination.

If you require language translation assistance, please contact Lincoln Financial Group to initiate a service provided free of charge to assist with understanding your claim and appeal rights.

如果您需要翻译方面的帮助，请联系我，我会免费为您服务以便了解您的要求和诉求。

Shá ata’ hane’go shíká a’doowoł nínízingo saad hosíníłįį’ dóó ná’ookąąh nííní’ąągo naaltsoos nííníłtsoozígíí hazho’ó bik’idi’deeshtįįł nínízingo doo bąąh ílínígóó níká a’doowoł éí biniiyé shił hodíílnih áko ákwe’égi níká adeeshwoł.

Si necesita traducción, contácteme para iniciar un servicio gratuito a fin de ayudarle a entender sus derechos de reclamo y apelación.

Kung nangangailangan ka ng tulong sa translation, mangyaring makipag-ugnayan sa akin upang gumamit ng serbisyong ibinigay nang walang bayad upang matulungan kang maunawaan ang iyong mga karapatan sa paghahabol at pag-aapela.

If you have any questions regarding this matter, please contact me.

Sincerely,

Heather Carignan
Appeals Consultant
Phone No.: (888) 437-7611 Ext. 16292
Secure Fax No.: (603) 334-5853